UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| HEIDI and ERNEST ANGLIN, | CASE NO. C18-0507-JCC |
| Plaintiffs, | ORDER |
| v. | |
| MERCHANTS CREDIT CORPORATION and JASON WOEHLER, | |
| Defendants. | |

This matter comes before the Court on Defendants' motion to dismiss (Dkt. No. 11). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary[1] and hereby GRANTS the motion for the reasons explained herein.

I.      BACKGROUND

This lawsuit arises out of a debt collection action involving the parties in state court. *See Merchants Credit Corporation v. Anglin*, Case No. CV16-0993 (Whatcom County District Court, June 14, 2016). Plaintiffs Heidi and Ernest Anglin (collectively the "Anglins") each owed

---

[1] Plaintiffs requested oral argument in response to Defendants' motion to dismiss. (*See* Dkt. No. 16 at 1.) The Court has considered all of the parties' filings, and determines that oral argument would not assist it in resolving Defendants' motion. *See* W.D. Wash. Local Civ. R. 7(b)(4). Further, Plaintiffs will not suffer prejudice from the Court's decision to not hold oral argument. *See Sovereign General Ins. Services, Inc. v. National Cas. Co.*, 359 Fed. App'x. 705, 708 (9th Cir. 2009).

various medical debts that were assigned to Defendant Merchants Credit Corporation ("Merchants") for collection. (Dkt. No. 2-1 at 4–8.) In June 2016, Merchants' attorney, Defendant Jason Woehler ("Woehler"), filed a collection action against the Anglins in Whatcom County District Court (hereinafter the "collection action"). (*Id*. at 1–2.)

The Anglins filed a counterclaim against Merchants, alleging it had violated the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691 *et seq.* and Federal Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*[2] (Dkt. No. 12-1 at 23–36.) The Anglins alleged that Merchants violated the ECOA because the collection action sought to hold each spouse liable for the other's debt. (*Id*. at 26.) The Anglins alleged that Merchants violated the FDCPA by failing to provide adequate notice of the debt before filing the collection action. (*Id*. at 31–33.)

In February 2017, the state court granted summary judgment in favor of Merchants on the Anglins' outstanding debt and entered a judgment against the Anglins in the amount of $3,490.56. (*Id*. at 5; Dkt. No. 2-2.) Pursuant to the judgment, Woehler issued a writ of garnishment on Ms. Anglin and her employer. (Dkt. Nos. 2-3, 12-1 at 6.) The Anglins moved to quash the writ, arguing that the judgment was not a final judgment because their counterclaims were still pending. (Dkt. No. 12-1 at 7.) In July 2017, the state court ruled that its summary judgment order was not a final judgment and quashed the writ of garnishment. (*Id*. at 8.)

In September 2017, the state court denied Merchants' motion to dismiss the Anglins' FDCPA counterclaim and granted the Anglins' voluntary dismissal of their ECOA counterclaim. (*Id*. at 8–9.) The parties proceeded to a bench trial on the Anglins' FDCPA counterclaim. (*Id*. at 9.) In November 2017, after holding a one-day trial, the state court orally-dismissed the Anglins' FDCPA counterclaim. (*Id*.) On February 8, 2018, the state court entered written findings of facts

---

[2] The Anglins also alleged claims for violation of the Washington Consumer Protection Act ("CPA") and common law negligence. (Dkt. No. 12-1 at 33–35.) Those causes of action appear to be derivative of the ECOA and FDCPA claims, in that Merchants' alleged violations of the federal statutes also made them liable for the state law claims. (*See id.* at 33–36.)

and conclusions of law supporting its ruling. (*Id*. at 55–56.)

On April 6, 2018, the Anglins filed the present lawsuit, alleging that Merchants and Woehler (collectively "Defendants") violated the ECOA because their collection lawsuit sought to hold each spouse liable for the other's debt. (*Id*. at 12–15.) The Anglins also allege that Defendants violated the FDCPA, the CPA, and committed common law negligence when they issued a writ of garnishment before there was a final judgment in the collection action.[3] (*Id*. at 15–24.)

Defendants moved to dismiss the Anglins' amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 11 at 1.) After Defendants filed their motion to dismiss, Woehler gave notice that he had filed a Chapter 7 bankruptcy petition. (Dkt. No. 20.) Plaintiffs filed notice of their intent to file a motion in the bankruptcy proceeding that would allow them to proceed with the present lawsuit against Woehler.[4] (Dkt. No. 21.) The Court stayed its decision on Defendants' motion to dismiss until the bankruptcy court ruled on Plaintiffs' motion to lift the automatic stay. (Dkt. No. 22.) On August 3, 2018, U.S. Bankruptcy Judge Hon. Christopher Alston lifted the automatic stay to allow Plaintiffs to proceed against Woehler in this action. (Dkt. No. 26-1.) Based on Judge Alston's ruling, this order is applicable to both Merchants and Woehler.

## II.    DISCUSSION

### A.    Legal Standard for Rule 12(b)(6) Motion to Dismiss

A defendant may move for dismissal when a plaintiff "fails to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its

---

[3] The Anglins do not allege a CPA claim against Woehler. (*See* Dkt. No. 16 at 11.)

[4] The filing of a bankruptcy petition "operates as a stay . . . of . . . the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C. § 362(a)(1).

face. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 678. A dismissal under Federal Rule of Civil Procedure 12(b)(6) "can [also] be based on the lack of a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

### B.    Materials Considered on Motion to Dismiss

Typically, district courts look only at the face of a complaint to decide a motion to dismiss. *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002). One exception to this rule allows courts to consider documents that are attached to the complaint. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Courts may also take judicial notice of a fact that is not subject to reasonable dispute because it can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b)(2), (d). Courts must take such notice if a party requests it and supplies the court with the necessary information. *Id.* at 201(c)(2).

Plaintiffs attached three documents to their amended complaint, which the Court will consider for the purpose of deciding Defendants' motion to dismiss (*See* Dkt. Nos. 2-1, 2-2, 2-3). Additionally, both parties ask the Court to judicially notice several documents. Defendants ask the Court to take judicial notice of: (1) a copy of the docket entries from the collection action; (2) various pleadings filed in the collection action; and (3) the findings of fact and conclusions of law issued by the state court after the bench trial in the collection action. (*See generally* Dkt. No. 12-1.) Plaintiffs ask the Court to take judicial notice of: (1) a table of contents, listing documents from the collection action; (2) a transcript of the bench trial held in the collection action; and (3) copies of all of the pleadings and attachments filed in the collection action, as well as documents from other court proceedings. (Dkt. Nos. 17-1–17-6.)

The Court will take judicial notice of all signed pleadings that were filed in the collection action as well as all of the rulings made by the state court because their authenticity is not subject

to reasonable dispute. (*See generally* Dkt. Nos. 12-1, 17-3–17-6); *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001) ("On a Rule 12(b)(6) motion to dismiss, when a court takes judicial notice of another court's opinion, it may do so 'not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity.'") (citation omitted). The Court declines to take judicial notice of the transcript of the bench trial offered by Plaintiffs because Defendants dispute its accuracy.[5] (Dkt. No. 17-2.) The Court also will not take judicial notice of documents submitted by Plaintiffs that were not filed in the collection action. (*See* Dkt. Nos. 17-1, 17-3 at 34–53, 17-5 at 21–35.)

**C.     *Res Judicata***

Defendants' primary argument in support of dismissal is that the Anglins' claims are barred by the doctrine of *res judicata*.[6] (Dkt. No. 11 at 2.) Essentially, Defendants argue that the Anglins are pursuing claims that either were or could have been litigated in the collection action. (*Id.*) The Anglins argue that they are pursuing different claims in this case. (*See* Dkt. No. 16.)

When district courts sit in diversity, they apply the forum state's law to determine the preclusive effect of a state court judgment. *Manufactured Home Communities Inc. v. City of San Jose*, 420 F.3d 1022, 1031 (9th Cir. 2005). Under Washington law, the doctrine of *res judicata* bars a party from litigating claims that either were, or should have been, litigated in a former action. *See Schoeman v. New York Life Ins. Co.*, 726 P.2d 1, 3 (Wash. 1986). The doctrine applies to cases where there is a prior judgment on the merits that dealt with the same (1) persons and parties, (2) causes of action, (3) subject matter, and (4) quality of parties. *Karlberg v. Otten*, 280 P.3d 1123, 1130 (Wash. Ct. App. 2012). Each of these elements must be present for *res judicata* to apply. *Hisle v. Todd Pac. Shipyards Corp.*, 93 P.3d 108, 115 (Wash. 2004).

1.     Final Judgment on the Merits

---

[5] The transcript was created by a legal assistant of the Anglins' attorney. (Dkt. No. 17-2.)

[6] Defendants also assert that the claims are barred by the *Rooker-Feldman* doctrine, and because the complaint fails to plausibly state a claim under Rule 12(b)(6). (Dkt. No. 11 at 2.) Because the Court grants dismissal on *res judicata* grounds, it need not reach these arguments.

"The threshold requirement of res judicata is a valid and final judgment on the merits in a prior suit." *Ensley v. Pitcher*, 222 P.3d 99, 103 (Wash. Ct. App. 2009). Washington's Civil Rules define a judgment as "the final determination of the rights of the parties in the action and includes any decree and order from which an appeal lies. A judgment shall be in writing and signed by the judge . . . " Wash. Super. Ct. Civ. R. 54(a)(1). The Washington Civil Rules also require that "[t]he attorney of record for the prevailing party shall prepare and present a proposed form of order or judgment not later than 15 days after the entry of the verdict or decision, or at any other time as the court may direct." *Id*. at 54(e).

Judicially noticeable materials demonstrate that a final judgment was entered in the collection action. In February 2017, the state court entered judgment against the Anglins on their outstanding debts. (Dkt. No. 2-2.) The parties proceeded to a bench trial on the Anglins' remaining FDCPA counterclaim. (Dkt. No. 12-1 at 9.) The state court orally-dismissed the Anglins' counterclaim following trial and ordered Merchants to prepare findings of facts and conclusions of law. (*Id*. at 9–10.) In February 2018, the state court issued a signed order containing findings of fact and conclusions supporting its dismissal of the Anglins' counterclaim. (*Id*. at 55–56.) The order stated: "Merchants did not violate the FDCPA and is entitled to a judgment of dismissal on the counterclaim." (*Id*. at 56.) The order was a final judgment because it resolved the parties' remaining claim, was prepared by Merchants, and was signed by the judge. *See* Wash. Super. Ct. Civ. R. 54(a)(1), (e).

The Anglins argue that "until Defendants enter Judgment on the Findings of Fact and Conclusions of Law on the FDCPA counterclaim, there is no final judgment as required by CRLJ 54(a)." (Dkt. No. 16 at 3–4.) The Court disagrees. Rule 54 does not require the filing of a separate judgment, so long as there is "entry of a formal order prepared (in most cases) by the prevailing party and signed by the judge." *Dep't of Labor & Indus. v. City of Kennewick*, 661 P.2d 133, 135 (Wash. 1983) (holding that judge's entry of a memorandum decision, without more, was not a final judgment). Here, the state court's signed order disposing of the Anglins'

remaining counterclaim represented a final judgment because it complied with the requirements of Rule 54. Therefore, the Court finds that there was a final judgment in the collection action for purposes of *res judicata*.

### 2. Persons and Parties

Parties may be nominally different, but the same for *res judicata* purposes. *Rains v. State*, 674 P.2d 165, 169 (Wash. 1983). While a party does not have to be identical in both suits, there must be at least privity between a party to the first suit and the party to the second suit. *Kuhlman v. Thomas*, 897 P.2d 365, 368 (Wash. Ct. App. 1995). Privity exists "where a person is in actual control of the litigation, or substantially participates in it." *Loveridge v. Fred Meyer, Inc.*, 887 P.2d 898, 900 (Wash. 1995). Courts in Washington have found privity where the parties to successive lawsuits share an employer-employee or principal-agent relationship. *See Kuhlman*, 897 P.2d at 368.

It is undisputed that the Anglins and Merchants were parties to the collection action.[7] While Woehler was not a party to that matter, he acted as Merchants' attorney throughout the litigation. (*See* Dkt. Nos. 2-2, 12-1 at 15.) The Court finds that Woehler was in privity with Merchants in the collection action because they shared a principal-agent relationship, and Woehler substantially participated in the litigation. *See Kuhlman*, 897 P.2d at 368. Therefore, the Court finds that the parties in both actions are the same for purposes of *res judicata*.[8]

### 3. Causes of Action

To determine whether the same causes of action are asserted in successive lawsuits, courts consider: (1) whether the rights or interests established in the prior judgment would be

---

[7] The Anglins are also represented in this case by the same attorney who represented them in the collection action. (*See* Dkt. No. 16 at 2.)

[8] The Court also finds that the quality of the persons for or against whom the claim is made is satisfied. *See Karlberg*, 280 P.3d at 1130. This element requires that the parties to both actions be in an adversarial posture with one another. *See Bordeaux v. Ingersoll Rand Co.*, 429 P.2d 207, 211 (Wash. 1967). That requirement is met in this case.

destroyed or impaired by the prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the suits involved infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts. *Ensley*, 222 P.3d at 108 (citation omitted). These factors are "analytical tools" none of which must be present to apply *res judicata*. *Id.* at 105; *see also Kuhlman*, 897 P.2d at 369 ("while there is no specific test for determining identity of causes of action, the following criteria should be considered"); *Abramson v. University of Hawaii*, 594 F.2d 202, 206 (9th Cir. 1979) ("Whether causes of action are identical . . . cannot be determined precisely by mechanistic application of a simple test."). The final consideration—whether the two suits arise from the same transactional nucleus of facts—is "the most important" consideration in determining whether the causes of action are identical. *Constantini v. Trans World Airlines*, 681 F.2d 1199, 1202 (9th Cir. 1982) (cited in *Rains*, 674 P.2d at 168).

Allowing the Anglins to pursue their claims in this lawsuit would not impair or destroy the rights established by the final judgment in the collection action. The collection action established that the Anglins were liable to Merchants for their unpaid medical debts, and that Merchants did not violate the FDCPA by providing insufficient notice of the debt. (*See* Dkt. Nos. 2-1, 12-1 at 55–56.) In this action, by contrast, the Anglins seek to hold Defendants liable for Woehler's issuance of a writ of garnishment prior to the entry of final judgment in the collection action. (*See generally* Dkt. No. 2.) Even if the Anglins ultimately succeeded on their claims, they would still be liable to Merchants for the medical debt. Nor would a finding of FDCPA liability in this case make Merchants liable for the FDCPA violations alleged in the collection action.

The evidence presented in this case and the collection action, while related, is not substantially similar. The evidence presented in the collection action dealt almost exclusively with Merchants' initial communication with the Anglins regarding the filing of that lawsuit. (*See* Dkt. No. 12-1 at 23–32, 55–56.) In the present case, the evidence supporting the Anglins' claims deals primarily with Woehler's actions in obtaining and filing the writ of garnishment. (*See*

*generally* Dkt. No. 2.) That said, much of the background evidence between the two claims—

such as the nature of the debt and the collection action—is identical. (*Compare* Dkt. No. 2, *with*

Dkt. No. 12-1 at 23–40.) The overlap of evidence would have made the Anglins' claims

convenient to try in a single case. *See Hadley v. Cowan*, 804 P.2d 1271, 1276 (Wash. Ct. App.

1991) (finding identity between successive causes of action that "would have constituted a

convenient trial unit.").

The Anglins' claims in this case and the collection action largely seek to enforce the

same rights. The Anglins filed the exact same causes of action in both lawsuits. (*Compare* Dkt.

Nos. 2, *with* Dkt. No. 12-1 at 23–40.) The Anglins' FDCPA and CPA claims in both actions,

although premised on different conduct, seek to enforce their rights to be free from deceptive

debt collection practices. (*Id.*; *see also* Dkt. No. 2 at 2–3) (Defendants violated FDCPA when

"[they] sought and obtained judgment against the separate estates of Heidi and Ernest and

attempted to garnish Heidi's paycheck before there was a final judgment in the case.") Indeed,

the Anglins' claims, which are based on many of the same statutory provisions, seek to hold

Defendants liable for allegedly trying to illegally collect the Anglins' debt. (*Id.*)

The Anglins' claims in this case and counterclaims in the collection action arise out of

the same transactional nucleus of facts. Both actions arise directly out of Merchants' filing of the

collection action in Whatcom County District Court. (*Compare* Dkt. No. 2, *with* Dkt. No. 12-1 at

23–40.) The Anglins' counterclaims in the collection action were premised on Merchants'

alleged failure to provide proper notice before filing the lawsuit. (Dkt. No. 12-1 at 23–30.) The

Anglins' claims in this case are based on the Defendants' conduct stemming from the collection

action—that is, from Woehler's issuance of a writ of garnishment based on the state court's entry

of summary judgment against the Anglins. (*See generally* Dkt. No. 2.) The Anglins' claims in

both lawsuits deal with a series of occurrences that are "intimately related in time, origin, and

motivation . . ." *Hadley*, 804 P.2d at 1276.

The Court has previously applied *res judicata* to bar a second lawsuit that arose out of the

parties' conduct in an earlier and related lawsuit. *See Smith v. State Farm Mut. Auto. Ins. Co.*, No. C12-1505-JCC, Dkt. No. 39 (W.D. Wash. April 11, 2013). In *Smith*, the plaintiff was involved in a car accident and filed a breach of contract claim in state court, alleging that her insurer had failed to provide adequate compensation under her Underinsured Motorist policy. *Id.* at 1. After obtaining a jury verdict that was above the policy limits, the plaintiff filed a second lawsuit against her insurer alleging bad faith based on the insurer's conduct before and during the first lawsuit. *Id.* at 2.

The Court held that both lawsuits arose from the same transactional nucleus of facts, even though the second suit dealt mainly with the defendant's conduct after the first suit was filed. *Id.* at 3. The Court reasoned that the successive suits were essentially based on the same underlying events and sought to redress similar wrongs. *Id.* The Court also emphasized that the plaintiff was aware of the facts underlying her bad faith claims while she was litigating the breach of contract claim in state court. *Id.* at 7. Other courts have similarly barred successive lawsuits where plaintiffs failed to amend their complaint to add related claims. *See, e.g.*, *Zweber v. State Farm Mut. Auto. Ins. Co.*, 39 F. Supp. 3d 1161, 1166–67 (W.D. Wash. 2014) ("[plaintiff] needed to either raise those claims at the outset of the prior action or else move to amend his complaint in that action once he learned about all of [defendant's] allegedly tortious conduct.")

Here, the Anglins' claims arose while the parties were litigating the collection action. Woehler's issuance of a writ of garnishment—which forms the basis for the Anglins' new claims—occurred as part of the collection action and while the Anglins' counterclaims were pending against Merchants. (*See* Dkt. Nos. 2-2, 2-3, 12-1 at 5–8.) At the latest, the Anglins were on notice of the facts underlying their present claims in July 2017, when the state court quashed the writ of garnishment. (Dkt. No. 12-1 at 7–8.) That happened several months before the parties proceeded to trial on the Anglins' FDCPA counterclaim. (*Id.* at 8–10.) The Anglins had ample opportunity to amend their claims against Merchants—and even chose to voluntarily dismiss their ECOA counterclaim—but failed to do so. This is not a situation where the application of

*res judicata* would work an injustice on plaintiffs, because they had an "unencumbered, full and fair opportunity to litigate [their] claims in a neutral forum." *Rains*, 674 P.2d at 169.

Considering all of the above factors, the Court finds that the causes of action in both lawsuits are the same for purposes of *res judicata*.

### 4. Subject Matter

"Although similar to the cause-of-action prong, the critical factors for subject matter are the nature of the claim or cause of action and the parties." *Landry v. Luscher*, 976 P.2d 1274, 1278 (Wash. Ct. App. 1999). The present case and the collection action share essentially the same subject matter. The Anglins assert the same causes of action in this lawsuit that they brought as counterclaims against Merchants in the collection action. *See supra* Part II.C.3. Although the facts supporting the Anglins' claims are slightly different, all of their claims arise directly out of the collection action. *Id*. Given that the claims and parties are all substantially related to the collection action, the Court finds that the lawsuits share the same subject matter for purposes of *res judicata*.

Based on the above, the Court finds that the Anglins' FDCPA, CPA, and negligence claims are barred by *res judicata*. Therefore, Defendants' motion to dismiss is GRANTED as to those claims, which the Court DISMISSES with prejudice.

### D. ECOA Claim

While the Court dismisses the Anglins' FDCPA, CPA, and negligence claims on *res judicata* grounds, it must separately analyze the Anglins' ECOA claim. The Anglins initially brought an ECOA counterclaim against Merchants in the collection action that is identical to the one asserted in this case. (*Compare* Dkt. No. 2 at 13–15, *with* Dkt. No. 12-1 at 30–32.) However, the state court allowed the Anglins to voluntarily dismiss their ECOA claim. (Dkt. No. 12-1 at 9.) Because the ECOA claim was voluntarily dismissed without prejudice it is not barred by *res judicata*. *See Wachovia SBA Lending, Inc. v. Kraft*, 200 P.3d 683, 688 (Wash. 2009) ("A voluntary dismissal leaves the parties as if the action had never been brought.").

The ECOA prohibits discrimination in the extension of credit "on the basis of race, color, religion, national origin, sex or marital status, or age." 15 U.S.C. § 1691(a)(1). Under the ECOA, credit discrimination occurs "when a regulation promulgated under the ECOA was violated." *Miller v. Am. Exp. Co.*, 688 F.2d 1235, 1239 (9th Cir. 1982). The Anglins assert that they were discriminated against on the basis of marital status when Defendants sought a judgment in the collection action that would make each spouse liable for the other's debt. (Dkt. No. 2 at 14.) The Anglins' theory of liability is unavailing.

First, the Anglins have not alleged facts that demonstrate Defendants are "creditors" subject to liability under the ECOA. The Act defines a "creditor" as "any person who regularly extends, renews, or continues credit; any person who regularly arranges for the extension, renewal, or continuation of credit; or any assignee of an original creditor who participates in the decision to extend, renew, or continue credit." 15 U.S.C. § 1691a(e). The term also includes "a creditor's assignee, transferee, or subrogee who participates in the decision of whether or not to extend credit." 12 C.F.R. § 202.2(l). The Anglins have not alleged any facts that demonstrate Merchants—who was assigned the Anglins' medical debt for collection—or Woehler participated in the decision to extend, renew, or continue credit. The Anglins' claim that Defendants "participated in a credit transaction" is conclusory and at odds with the plain language of the statute. *See* 15 U.S.C. § 1691a(e); *see also Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 408 (6th Cir. 1998) (holding that an assignee who merely attempts to collect a debt is not a "creditor" under the ECOA).

Second, both the ECOA and its implementing regulations exempt from liability collection activities related to a defaulted debt. The statute lists the types of "adverse actions" that a creditor is prohibited from taking without first providing notice. *See* 15 U.S.C. § 1691(d)(6) ("adverse action includes a 'denial or revocation of credit, a change in the terms of an existing credit arrangement, or a refusal to grant credit in substantially the amount or on substantially the terms requested.'") An adverse action does not include "a refusal to extend additional credit

under an existing credit arrangement where the applicant is delinquent or otherwise in default, or where such additional credit would exceed a previously established credit limit." *Id*. The implementing regulations also exclude "[a]ny action or forbearance relating to an account taken in connection with inactivity, default, or delinquency as to that account." 12 C.F.R. § 202.2(c)(2)(ii).

Here, the conduct that the Anglins argue the ECOA prohibits and which Defendants engaged in—seeking a judgment arising from a defaulted debt—is explicitly exempted from liability by the statute. *See Lewis*, 135 F.3d at 406 (holding that debt collector is not liable under the ECOA for filing a lawsuit to collect unpaid debt). Moreover, the Anglins have not pointed to any provision in the ECOA that prohibits legal judgments which make spouses mutually liable for one another's debt.[9] For those reasons, Defendants' motion to dismiss the Anglins' ECOA claim is GRANTED, and the claim is DISMISSED with prejudice.[10]

## III. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (Dkt. No. 11) is GRANTED. Plaintiffs' complaint is DISMISSED with prejudice.

DATED this 24th day of September 2018.

John C. Coughenour
UNITED STATES DISTRICT JUDGE

---

[9] The Anglins' assertion that Revised Code of Washington section 26.16.205 violates the ECOA is conclusory and without support in state or federal case law. (*See* Dkt. No. 2 at 14.)

[10] Dismissal with prejudice is appropriate because no amendment could save the claim. *Krainski v. Nev. ex rel. Bd. of Regents of Nev. Sys. of Higher Educ.*, 616 F.3d 963, 972 (9th Cir. 2010).