UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| HEIDI and ERNEST ANGLIN<br><br>Plaintiffs,<br><br>v.<br><br>MERCHANTS CREDIT CORPORATION, *et al*.<br><br>Defendants. | Case No.: 18-cv-507-BJR<br><br>ORDER DISMISSING SECOND AMENDED COMPLAINT |

## I.   INTRODUCTION

Heidi and Ernest Anglin ("Plaintiffs") bring this action against Merchants Credit Corporation ("Merchants") and Jason Woehler ("Woehler") (collectively, "Defendants"), alleging that Defendants violated state and federal statutes and acted negligently when they obtained a writ of garnishment against Ms. Anglin as part of a debt collection action. Dkt. No. 2. Currently before the Court is Defendants' motion to dismiss Plaintiffs' second amended complaint pursuant to Federal Rules of Civil Procedure ("FRCP") 12(b)(6). Dkt. No. 67. Plaintiffs oppose the motion. Dkt. No. 69. Having reviewed the motion, the opposition thereto, the record of the case, and the relevant legal authority, the Court will dismiss the second amended complaint. The reasoning for the Court's decision follows.

1

## II. BACKGROUND

### A. Procedural History

This lawsuit arises out of a debt collection action between the parties in Washington State court. Plaintiffs, who are married, each owed medical debt that, together, totaled approximately $3,000.00. The debt was assigned to Merchants for collection and in June 2016, Merchants' attorney, Woehler, filed a collection action against Plaintiffs in Whatcom County District Court. *See Merchants Credit Corporation v. Anglin*, No. 16-cv-0993 (Whatcom Cty. Dist. Ct. June 14, 2016). Plaintiffs filed counterclaims against Merchants, alleging claims under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691 *et seq.*, and the Washington Consumer Protection Act ("WCPA"), RCW § 19.86 *et seq.*, as well as a common law negligence claim.

In February 2017, the Whatcom County Court granted summary judgment in favor of Merchants on Plaintiffs' outstanding debt and entered judgment against Plaintiffs in the amount of $3,490.56. Dkt. No. 17, Ex. 5. Important to the instant lawsuit, pursuant to this judgment, Defendants applied for a writ of garnishment. Dkt. No. 12, Ex. 1 at 6. Plaintiffs moved to quash the writ, arguing that the judgment was not a final judgment because their counterclaims were still pending. *Id.* at 8. The Whatcom County Court agreed and quashed the writ of garnishment. Dkt. No. 68, Ex. 1. Thereafter, the Whatcom County Court held a one-day bench trial on Plaintiffs' FDCPA counterclaim.[1] The County Court dismissed the counterclaim at the conclusion of the bench trial, concluding that Merchants had not violated the FDCPA. Thus, final judgment was entered against Plaintiffs and in favor of Merchant in the amount of $3,490.56 plus interest.

---

[1] Plaintiffs had previously voluntarily dismissed the ECOA counterclaim.

In April 2018, Plaintiffs filed the instant lawsuit in this district court, alleging Defendants violated the FDCPA, the WCPA, and committed common law negligence when they obtained a writ of garnishment before there was a final judgment in the Whatcom County debt collection action. Plaintiffs also alleged that Defendants violated the ECOA because the debt collection action sought to hold each spouse liable for the other's debt. The matter was assigned to U.S. District Judge the Honorable John C. Coughenour.

In September 2018, Judge Coughenour entered an order dismissing Plaintiffs' FDCPA, WCPA, and negligence claims on res judicata grounds, and dismissing the ECOA claim on the merits. Dkt. No. 32. Plaintiffs appealed and the Ninth Circuit affirmed in part, reversed in part, and remanded the matter for further proceedings consistent with its decision. Dkt. No. 39. Specifically, the Ninth Circuit affirmed Judge Coughenour's dismissal of the ECOA claim on the merits but reversed the dismissal of the remaining claims on res judicata grounds, concluding that res judicata did not apply to those claims. The matter was reassigned to this U.S. District Judge in January 2020. Dkt. No. 46. Thereafter, Plaintiffs filed a second amended complaint. Dkt. No. 61.

**B.     The Second Amended Complaint**

Plaintiffs once again allege that Defendants violated the FDCPA when they obtained the writ of garnishment from the Whatcom County Court. Plaintiffs also allege that Defendants violated the WCPA and the Washington Collection Agency Act ("WCAA"). Lastly, Plaintiffs allege that Defendants acted negligently towards them.

Defendants move to dismiss each of these claims pursuant to FRCP 12(b)(6). Dkt. No. 67. They allege that Plaintiffs' claims are barred by the doctrine against claim-splitting as well as

3

the *Rooker-Feldman* doctrine. They also assert that each of the claims fails on the merits. The Court will address each of these arguments in turn.

### III.   STANDARD OF REVIEW

A defendant may move for dismissal of the complaint pursuant to FRCP 12(b)(6) when the complaint "fails to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A dismissal under FRCP 12(b)(6) "can [also] be based on the lack of a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988) (citing *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533–34 (9th Cir.1984)).

### IV.   DISCUSSION

As stated above, the second amended complaint asserts that Defendants violated the FDCPA, the WCPA, and attempted to collect the debt owed in a negligent manner. Defendants move to dismiss all three causes of action, arguing that the claims run afoul of the claim-splitting and *Rooker-Feldman* doctrines, as well as fail on the merits. Plaintiffs oppose Defendants' motion to dismiss the FDCPA and WCPA claims, but voluntarily withdraw the negligence claim.[2] Thus, only the FDCPA and WCPA claims remain.

---

[2] The Court's Standing Order for All Civil Cases states that motions to dismiss are discouraged if an alleged defect in the operative complaint can be cured through amendment; indeed, the Standing Order requires the parties to meet and confer regarding the same before filing a motion to dismiss. Dkt. No. 47 at 4, Section II (F). The purpose of the "meet and confer" requirement is to minimize the use of the Court's limited resources on matters that the parties should be able to resolve without court intervention. Here, Defendants' counsel complied with the "meet and confer" requirement, (*see* Dkt. No. 67, p. 1, fn. 1) but alleges that Plaintiffs' counsel failed to participate in the conference in a meaningful manner. This allegation is substantiated by the fact that in their opposition to the motion

### A. The Claim-Splitting and *Rooker-Feldman* Doctrines

"The doctrine of claim-splitting bars a party from bringing claims arising from the same set of facts in successive actions, rather than bringing them all at once." *Rivera v. Am. Fed'n of State, Cty., and Mun. Employees, AFL-CIO, Local 444*, No. 3:16-cv-04959, 2017 WL 3021038, at *3 (N.D. Cal. July 17, 2017) (citing *United States v. Haytian Republic*, 154 U.S. 118, 125 (1894)). The doctrine exists to protect a party "from being harassed by repetitive actions based on the same claim." *Id.* (quoting *Clements v. Airport Auth. of Washoe Cty.*, 69 F.3d 321, 328 (9th Cir. 1995)). To determine whether a suit is duplicative, courts in this Circuit "examine whether the causes of action and relief sought, as well as the parties or privies to the action, are the same." *Adams v. California Dep't of Health Servs.*, 487 F.3d 684, 689 (9th Cir. 2007), *overruled in part on other grounds by Taylor v. Sturgell*, 553 U.S. 880 (2008).

The *Rooker-Feldman* doctrine prohibits a federal court from exercising jurisdiction over a lawsuit that is a *de facto* appeal of a state court judgment. *Carmona v. Carmona*, 603 F.3d 1041, 1050–51 (9th Cir. 2010). The doctrine bars "state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced" from asking district courts to review and reject those judgments. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005); *see also*, *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1140 (9th Cir. 2004) ("*Rooker-Feldman* thus applies only when the federal plaintiff both asserts as her injury legal error or errors by the state court *and* seeks as her remedy relief from the state court judgment.") (emphasis in original).

---

to dismiss, rather than oppose Defendants' arguments as to why the negligence claim should be dismissed, Plaintiffs simply move to withdraw the claim, a decision that could have been made in a meaningful meet and confer conference. This is exactly the type of wasteful use of the Court's resources that the "meet and confer" requirement is meant to eliminate. The Court expects counsel to be mindful of his obligations in the future.

Defendants argue that these two doctrines work in conjunction to bar Plaintiffs' claims in this lawsuit because Plaintiffs already "litigated their legal theories regarding the writ of garnishment" when they moved the Whatcom County Court to quash the writ. Dkt. No. 67 at 5. Defendants further allege that Plaintiffs could have amended their counterclaims in the Whatcom County case to add claims based on the garnishment but instead chose to wait to bring such claims in this court. According to Defendants, this is exactly the type of litigation tactic that the claim-splitting doctrine prohibits. Moreover, Defendants argue, Plaintiffs' claims in this litigation are nothing more than a poorly disguised attempt to add additional sanctions and attorney's fees to the Whatcom County Court's order quashing the writ of garnishment. Defendants insist that this runs afoul of the *Rooker-Feldman* doctrine because any additional award by this Court would necessarily presume that the Whatcom County Court's order quashing the garnishment "was insufficient and needed to be expanded upon." *Id.* at 7.

Defendants' arguments are unavailing in light of the Ninth Circuit's previous assessment of the relationship between the claims in this lawsuit (i.e., claims that are based on the garnishment) and the underlying claims in the Whatcom County case (i.e., claims that were based on Defendants' debt collection activities before they attempted to garnish Ms. Anglin's wages). The Ninth Circuit has already determined that the garnishment-based claims in this lawsuit, while "related in subject matter" to the claims underlying the Whatcom County lawsuit, are "otherwise independent of [those] claims." Dkt. No. 39 at 3. Thus, the Ninth Circuit concluded, Plaintiffs' claims based on the garnishment action do not "concur in identity" with those resolved in the Whatcom County lawsuit and are not barred by res judicata. *Id.* at 3–4. This reasoning applies equally to the claims-splitting doctrine. The claims-splitting doctrine is a "facet" of res judicata and applies the same claim preclusion test. *Adams*, 487 F.3d at 689 (citing

*Davis v. Sun Oil Co.*, 148 F.3d 606, 613 (6th Cir. 1998) (noting that the test for determining whether a suit is duplicative is the same under res judicata and the claims-splitting doctrine). Because the garnishment-based claims in this lawsuit survived Defendants' claim preclusion challenge under res judicata, they necessarily survive the same challenge under the claims-splitting doctrine.[3]

The Ninth Circuit also rejected Defendants' argument that because Plaintiffs failed to amend their counterclaims in the Whatcom County litigation to include the garnishment-based claims, they are precluded from bringing such claims in this litigation. The Ninth Circuit noted that Plaintiffs "had no obligation to seek an amendment to their complaint alleging these new claims" and failing to do so is not a basis for barring the instant claims. Dkt. No. 39 at 3. Thus, this Court likewise rejects Defendants' argument on this point.

Nor is this Court persuaded by Defendants' assertion that the *Rooker-Feldman* doctrine bars Plaintiffs' claims in this lawsuit. Plaintiffs are not complaining of injuries caused by the Whatcom Court's decision; they are complaining of injuries caused by Defendants' alleged wrongful actions associated with the garnishment action. Simply put, the *Rooker-Feldman* doctrine is inapplicable. *See Exxon Mobil*, 544 U.S. at 284 ("The *Rooker-Feldman* doctrine, we hold today, is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.").

---

[3] "[T]he primary difference [between the claim-splitting doctrine and res judicata] is that, in claim-splitting, a litigant is able to move for dismissal *without* demonstrating that 'a court of competent jurisdiction has entered a final judgment on the merits' in the first action." *Cook v. C.R. England, Inc.*, No. 12-cv-3515, 2012 WL 2373258, at *3 (C.D. Cal. June 21, 2012) (emphasis in original) (quoting *Comm'r v. Sunnen*, 333 U.S. 591, 597 (1948)).

Having concluded that Plaintiffs' claims are not precluded by either the claim-splitting or *Rooker-Feldman* doctrines, the Court now turns to the merits of the claims.

### B.     The FDCPA Claim

The FDCPA was enacted "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent state action to protect consumers against debt collection abuses." *Wade v. Reg'l Credit Ass'n*, 87 F.3d 1098, 1099 (9th Cir. 1996) (quoting 15 U.S.C. § 1692(e)). Whether conduct violates the FDCPA is determined by analyzing the conduct from the prospective of the "least sophisticated debtor," that is, courts "seek to ensure that even the least sophisticated debtor is able to understand, make informed decisions about, and participate fully and meaningfully in the debt collection process." *Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1171 (9th Cir. 2006). Because the FDCPA is a remedial statute, it must be construed liberally in favor of the debtor. *Id.* at 1176 (citing *Johnson v. Riddle*, 305 F.3d 1107, 1117 (10th Cir. 2002)).

Plaintiffs' FDCPA claim is based entirely on the writ of garnishment Defendants obtained from the Whatcom County Court. *See* Dkt. No. 61 at ¶ 4. Plaintiffs allege that Defendants' actions related to the garnishment violated the following sections of the FDCPA: §1692b(6) (communication with third parties), §1692(e)(2)(A) (falsely representing the legal status of debt), §1692e(5) (threat to take action that cannot or is not intended to be taken), §1692e(10) false representation or deceptive means), §1692e(13) (falsely representing legal process), §1692(f) (use of unfair or unconscionable means), and §1692(f)(1) (collection of fees not included in principal obligation). *Id.* at ¶ 76.

Plaintiffs' claim is unavailing. This Court has reviewed Washington's procedures for obtaining a garnishment as set forth in RCW § 6.27.020 and the Court notes that the statute does not specify that the judgment must be final before a garnishment can be obtained.[4] *See* WASH. REV. CODE § 6.27.020. Rather, the statute simply states that: "[t]he clerks of the superior and district courts of this state may issue writs of garnishment returnable to their respective courts for the benefit of a judgment creditor who has a judgment wholly or partially unsatisfied in the court from which the garnishment is sought." *Id.* Plaintiffs cite to Washington State's Civil Rule for Courts of Limited Jurisdiction ("CRLJ") 54 for the proposition that the judgment must be final before a garnishment may be obtained. Dkt. No. 61 at ¶ 44. Thus, at worst, Defendants violated a state court procedural rule — not substantive law — when they applied for the writ of garnishment based on the valid, albeit, not final judgment. The appropriate response was to contest the garnishment in the court from which it was issued — i.e., the Whatcom County Court — which Plaintiffs did. The Whatcom County Court agreed with Plaintiffs and granted them the relief they requested: it quashed the writ. In other words, the procedural mishap was quickly resolved by the court in which the mishap occurred.[5]

---

[4] Under Washington law, a creditor seeking a writ of garnishment must submit an affidavit stating: (1) that the creditor has an unsatisfied judgment in the court in which it seeks the writ; (2) the amount alleged due under the judgment; (3) that the creditor believes the garnishee (in this case, Safeway) is indebted to the debtor in amounts exceeding those exempted from garnishment by state or federal law, and (4) whether the garnishee is the debtor's employer. WASH. REV. CODE § 6.27.060. If the application complies with the statutory requirements, the clerk must docket the case and issue a writ of garnishment commanding the garnishee to answer the writ within twenty days. WASH. REV. CODE § 6.27.070. In its answer, the garnishee must provide information about the funds of the debtor in its control and the amount it owed the debtor at the time of service of the writ. WASH. REV. CODE § 6.27.190. Thereafter, either the creditor or debtor may contest the garnishee's answer by filing an affidavit, to which the garnishee may respond by affidavit. WASH. REV. CODE §§ 6.27.210, .220. Upon the expiration of the time for filing the garnishee's response, any party may note the matter for a hearing to determine if there is an issue for trial. WASH. REV. CODE § 6.27.220.

[5] The Court notes that Plaintiffs could have moved the Whatcom County Court for costs and reasonable attorney's fees associated with challenging the garnishment, *see* WASH. REV. CODE § 6.27.230, but apparently chose not to do so.

Generally, such procedural mishaps in state court cannot be the basis for a FDCPA claim. *See Lena v. Cach, LLC*, No. 14-cv-01805, 2015 WL 4692443, at * 5 (N.D. Ill. Aug. 6, 2015) (claims under the FDCPA cannot be based on evidentiary and procedural deficiencies in a state-court action); *Beavers v. Midland Funding, LLC*, No. 4:16-cv-00886, 2017 WL 2568918, at *3, n. 3 (E.D. Ark. June 13, 2017) ("procedural irregularities are not cognizable under the FDCPA"); *Washington v. N. Star Capital Acquisition, LLC*, No. 08-cv-2823, 2008 WL 4280139, at *2 (N.D. Ill. Sept. 5, 2008) ("[T]he FDCPA will not be used as a vehicle to litigate claims arising under the Illinois rules of civil procedure."); *Drennan v. First Resolution Inv. Corp.*, No. 2:08-cv-461, 2010 WL 11619554, at *4 (E.D. Tex. Mar. 1, 2010) ("At best, the Defendants' use of the suit on account did not meet requirements under state procedural rules, but that does not rise to the level of a violation of the FDCPA. . . . This is not the type of claim or collection effort by a debtor that the FDCPA was intended to prevent. The FDCPA was designed to provide basic, overarching rules for debt collection activities; it was not meant to convert every violation of a state debt collection law into a federal violation."), *aff'd*, 389 F. App'x 352 (5th Cir. 2010).

The Court concludes that Defendants' procedural error was innocuous and, certainly not "unconscionable" in either the legal or lay sense, and as such, cannot be the basis for a FDCPA claim. *See Wade*, 87 F.3d at 1100 (9th Cir. 1996) (defendants' violation of state law was innocuous and any remedy to which plaintiff was entitled lay in state law, not the FDCPA). Therefore, Plaintiffs' FDCPA claim fails as a matter of law and must be dismissed.

**C.     The WCPA Claim**

Washington's Consumer Protection Act ("WCPA") provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." WASH. REV. CODE § 19.86.020. The purpose of WCPA is to

"complement the body of federal law governing restraints of trade, unfair competition and unfair, deceptive and fraudulent acts and practices in order to protect the public and foster fair and honest competition." WASH. REV. CODE § 19.86.920; *Panag v. Farmers Ins. Co. of Washington*, 204 P.3d 885, 889 (2009) (en banc). The WCPA is to be "liberally construed that its beneficial purposes may be served." WASH. REV. CODE § 19.86.920; *Short v. Demopolis*, 691 P.2d 163, 166 (Wash. 1984) (en banc).

The WCPA provides that "[a]ny person who is injured in his or her business or property" by a violation of the Act may bring a civil suit for injunctive relief, damages, attorney fees and costs, and treble damages. WASH. REV. CODE § 19.86.090. To prevail on a WCPA claim, the plaintiff must prove (1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) affecting the public interest, (4) injury to a person's business or property, and (5) causation. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 535 (1986).

Here, Plaintiffs allege that Merchants' actions related to the garnishment proceedings in state court violated the WCPA through two means.[6] First, they allege that Defendants' FDCPA violations constitute *per se* violations of the WCPA. As this Court has already determined that Defendants did not violate the FDCPA, this basis for Plaintiffs' WCPA claim fails. Second, Plaintiffs allege that Merchants violated the Washington Collection Agency Act ("WCAA") and such violations constitute a *per se* violation of the WCPA.[7] Dkt. No. 61 at ¶¶ 72(A)–(E). The WCAA governs debt collection agencies and places certain restrictions on their collection practices. *See* WASH. REV. CODE § 19.16.250; *Watkins v. Peterson Enters., Inc.*, 57 F. Supp. 2d

---

[6] Plaintiffs bring the WCPA claim against Merchants only.
[7] Plaintiffs also allege that Merchants "violated the WCPA independent of any WCAA violation." Dkt. No. 61 at ¶ 71. However, the operative complaint does not delineate in what way (independent of the WCAA or FDCPA) Plaintiffs contend that Defendants violated the WCPA.

11

1102, 1109 (E.D. Wash. 1999). Violating the WCAA constitutes a *per se* satisfaction of the public interest requirement for a WCPA claim. *Evergreen Collectors v. Holt*, 803 P.2d 10, 12 (Wn. App. 1991). However, the four remaining elements — (1) an unfair or deceptive act or practice, (2) that occurs in trade or commerce and (3) causes (4) injury to Plaintiffs' business or property — must be separately established. *Id.* Because, at a minimum, Plaintiffs cannot satisfy the "trade or commerce" requirement, the WCPA claim must be dismissed.

Trade or commerce for purposes of the WCPA is defined as "the sale of assets or services, and any commerce directly or indirectly affecting the people of the state of Washington." WASH. REV. CODE § 19.86.010(2). Here, Plaintiffs allege that Merchants violated the WCPA when it instructed its attorney to commence the garnishment proceedings.[8] However, this cannot be the basis for a WCPA claim because conduct taken in the course of litigation is not conduct in trade or commerce. *See Dalesandro v. Longs Drug Stores California, Inc*. 383 F. Supp. 2d 1244, 1250 (D. Haw. 2005) (stating that conduct that occurred in the context of settlement and preparation for litigation does not occur in trade or commerce); *see also, Wells Fargo Bank, N.A. v. Burger,* No. 12-cv-00585, 2013 WL 5351060, at *3 (D. Haw. Sept. 23, 2013) (conduct that occurred during the course of a judicial foreclosure did not occur in "trade or commerce); *State, Office of Atty. Gen. v. Shapiro & Fishman, LLP*, 59 So. 3d 353, 356 (Fla. Dist. Ct. App. 2011) (concluding that Attorney General's subpoena is more akin to conduct in the processing of legal claims, as opposed to traditional notions of trade or commerce); *Begelfer v. Najarian*, 409 N.E.2d 167, 176 (Mass. 1980) (finding that "defendants' pursuit of their contractual and legal remedies" was not engaging in "trade or commerce"); *Pursell v. First Am. Nat'l Bank*, 937 S.W.2d 838, 842 (Tenn. 1996) (holding that a bank's and company's actions

---

[8] Plaintiffs do not allege a WCPA claim against Mr. Woehler, Merchants' attorney who initiated the garnishment proceedings.

with regard to repossession of collateral securing loan did not affect conduct of trade or commerce within meaning of Tennessee Consumer Protection Act). Accordingly, Plaintiffs' WCPA claim must be dismissed.[9]

## V.  CONCLUSION

For the foregoing reasons, the Court HEREBY GRANTS Defendants' motion to dismiss the second amended complaint.

Dated this 15th day of July 2020.

*[signature]*
Barbara Jacobs Rothstein
U.S. District Court Judge

---

[9] Even if Merchants was somehow vicariously liable for Mr. Woehler's actions, the attorney's act of seeking the writ of garnishment is not the type of entrepreneurial legal activity that satisfies the "trade or commerce" element of a WCPA claim. *See Carter v. Suttell & Assocs., PS*, No. 63628-6-I, 2011 WL 396038, at *5 (Wash. Ct. App. Jan.13, 2011) ("[m]erely obtaining fees, either through the judicial process or the process of billing a client for the services rendered does not convert ... [legal] services into 'entrepreneurial' actions ...."); *Medialdea v. Law Office of Evan L. Loeffler PLLC*, No. 09-cv-55, 2009 WL 1767185, at *8 (W.D. Wash. June 8, 2009) ("court proceeding [did] not constitute 'trade or commerce' under the CPA"); *Gray v. Suttell & Assocs.*, 2012 WL 1067962, at *5 (E.D. Wash. Mar. 28, 2012) (citing *Michael v. Mosquera–Lacy*, 165 Wash.2d 595, 603, 200 P.3d 695 (2009)) (claims directed at a lawyer's competence or legal strategy do not satisfy the WCPA's "trade or commerce" element).